AO 472 (Rev. 11/16) Order of Detention Pending Trial

United States District Court
Southern District of Texas

**ENTERED**
June 22, 2022
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

| | |
|---|---|
| United States of America ) | |
| v. ) | Case No. 4:19-cr-607 |
| ) | |
| Willie James Collins ) | |
| *Defendant* ) | |

## ORDER OF DETENTION PENDING TRIAL

### Part I - Eligibility for Detention

Upon the

☒ Motion of the Government attorney pursuant to 18 U.S.C. § 3142(f)(1), or

☐ Motion of the Government or Court's own motion pursuant to 18 U.S.C. § 3142(f)(2),

the Court held a detention hearing and found that detention is warranted. This order sets forth the Court's findings of fact and conclusions of law, as required by 18 U.S.C. § 3142(i), in addition to any other findings made at the hearing.

### Part II - Findings of Fact and Law as to Presumptions under § 3142(e)

☐ **A. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(2)** *(previous violator)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any other person and the community because the following conditions have been met:

☐ **(1)** the defendant is charged with one of the following crimes described in 18 U.S.C. § 3142(f)(1):

☐ **(a)** a crime of violence, a violation of 18 U.S.C. § 1591, or an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed; **or**

☐ **(b)** an offense for which the maximum sentence is life imprisonment or death; **or**

☐ **(c)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508); **or**

☐ **(d)** any felony if such person has been convicted of two or more offenses described in subparagraphs (a) through (c) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (a) through (c) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; **or**

☐ **(e)** any felony that is not otherwise a crime of violence but involves:
**(i)** a minor victim; **(ii)** the possession of a firearm or destructive device (as defined in 18 U.S.C. § 921); **(iii)** any other dangerous weapon; or **(iv)** a failure to register under 18 U.S.C. § 2250; **and**

☐ **(2)** the defendant has previously been convicted of a Federal offense that is described in 18 U.S.C. § 3142(f)(1), or of a State or local offense that would have been such an offense if a circumstance giving rise to Federal jurisdiction had existed; **and**

☐ **(3)** the offense described in paragraph (2) above for which the defendant has been convicted was committed while the defendant was on release pending trial for a Federal, State, or local offense; **and**

☐ **(4)** a period of not more than five years has elapsed since the date of conviction, or the release of the defendant from imprisonment, for the offense described in paragraph (2) above, whichever is later.

☐ **B. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(3)** *(narcotics, firearm, other offenses)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community because there is probable cause to believe that the defendant committed one or more of the following offenses:

  ☐ **(1)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508);

  ☐ **(2)** an offense under 18 U.S.C. §§ 924(c), 956(a), or 2332b;

  ☐ **(3)** an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;

  ☐ **(4)** an offense under Chapter 77 of Title 18, U.S.C. (18 U.S.C. §§ 1581-1597) for which a maximum term of imprisonment of 20 years or more is prescribed; **or**

  ☐ **(5)** an offense involving a minor victim under 18 U.S.C. §§ 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425.

☐ **C. Conclusions Regarding Applicability of Any Presumption Established Above**

  ☐ The defendant has not introduced sufficient evidence to rebut the presumption above, and detention is ordered on that basis. *(Part III need not be completed.)*

  **OR**

  ☐ The defendant has presented evidence sufficient to rebut the presumption, but after considering the presumption and the other factors discussed below, detention is warranted.

## Part III - Analysis and Statement of the Reasons for Detention

After considering the factors set forth in 18 U.S.C. § 3142(g) and the information presented at the detention hearing, the Court concludes that the defendant must be detained pending trial because the Government has proven:

☒ By clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community.

☒ By a preponderance of evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required.

In addition to any findings made on the record at the hearing, the reasons for detention include the following:

  ☒ Weight of evidence against the defendant is strong
  ☒ Subject to lengthy period of incarceration if convicted
  ☒ Prior criminal history
  ☐ Participation in criminal activity while on probation, parole, or supervision
  ☐ History of violence or use of weapons
  ☐ History of alcohol or substance abuse
  ☒ Lack of stable employment
  ☒ Lack of stable residence
  ☒ Lack of financially responsible sureties
  ☐ Lack of significant community or family ties to this district

- [ ] Significant family or other ties outside the United States
- [ ] Lack of legal status in the United States
- [ ] Subject to removal or deportation after serving any period of incarceration
- [x] Prior failure to appear in court as ordered
- [ ] Prior attempt(s) to evade law enforcement
- [ ] Use of alias(es) or false documents
- [ ] Background information unknown or unverified
- [x] Prior violations of probation, parole, or supervised release

OTHER REASONS OR FURTHER EXPLANATION:

On June 21, 2022, the Court held a hearing to determine whether Defendant Willie James Collins should be held in custody pending trial in accordance with the Bail Reform Act of 1984, 18 U.S.C. § 3142(f). The Grand Jury charged Defendant in an Indictment in Case No. 4:19-cr-607, with conspiracy to commit money laundering in violation of 18 USC §§ 1956 (h), and wire fraud in violation of 18 U.S.C. §§ 1343 & 2. Assistant United States Attorney Quincy Ollison appeared on behalf of the United States (the "Government"); Assistant Federal Public Defender Darryl Austin appeared on behalf of Defendant.

Defendant's Background

Pretrial Services ("PTS") gave a report after interviewing the Defendant.

Defendant is 50 years old and was born and raised in Louisiana, where he lived until 2016 when he moved to Houston. He lives in his deceased grandmother's home with his uncle. His mother and siblings live in Louisiana. He has 8 children who all live in Louisiana. He has been working for his uncle as a handyman and would return to work for him if released on bond. He has no assets.

Defendant has a long criminal record, starting at age 17 with a conviction for felony carnal knowledge of a juvenile. He has at least 3 felony convictions, including for possession of controlled substances, distribution of controlled substances, and domestic abuse. He has had his probation revoked in one case and finished one probation unsatisfactorily. He failed to appear for an arraignment in one case. He has been charged with misdemeanor failure to identify and give false information, but the charges were dismissed.

PTS recommended detention.

Evidence Regarding the Pending Complaint

At the hearing, the Government offered testimony of an Agent with the Federal Bureau of Investigations ("FBI"), concerning the investigation and Defendant's subsequent arrest. The Court finds his testimony to be credible. Agent testified to the following:

Agent was involved in an investigation of a Business Email Compromise ("BEC"). In January 2019, Blue Cross Blue Shield of Nebraska ("BCBS") made a complaint that it was the victim of a BEC. Aetna filed a similar complaint. The investigation uncovered facts that Defendant was involved in the BEC. He opened bank accounts to receive stolen money and then withdrew or transferred some of the money before the transactions could be rescinded or contested. Defendant set up accounts at two banks under the name W. Group Tech, a DBA filed in Harris County. The name of the filer was Willie James Collins. The address given was on Providence Street in Houston. The sole signatory on the accounts was Collins.

Apparently, his co-conspirators, who remain unknown, contacted BCBS and Aetna, and had these insurance companies wire money in payment of purported health care claims to the accounts Collins opened for W. Group Tech. Between

January and February 2019, BCBS wired $2.8 million to an account Collins controlled at BBVA. Defendant withdrew $41,000 and took a check card for $4700 from BBVA. The bank froze the remaining balance based on its own investigation into suspicious activity in the accounts. Defendant made attempts to get the funds released. He said that he received the funds as part of a medical insurance claim as a result of a car accident.

Between January and March 2019, Aetna wired $670,000 to an account Collins controlled at Wood Forest Bank. Defendant withdrew approximately $240,000 in check cards, cashiers' checks, and additional checks. The bank froze the remaining balance based on suspicious activity.  Defendant asked the bank to release the funds. He was not able to explain to the bank what he knew about Aetna. He told the bank he used to work for Aetna.

Nothing in the Texas Workforce ("TWF"") records showed Defendant worked for Aetna or had any employment related to the healthcare field. According to TWF records, Defendant's last employment was with a stevedoring company in the fourth quarter of 2018, operating cranes to offload shipping containers.

On April 23, 2019, Agent obtained a search warrant for Defendant's Providence Street address and an arrest warrant for Defendant. On the same day, Agent went to execute the warrants, but Defendant was not home. His cousin answered the door. He told them Defendant was at work and would return later. He was asked to have Defendant call the Agent. Defendant never called.

Defendant was indicted in this case in 2019. Attempts were made to arrest him, but Agent and his team were unable to locate Defendant at his house or his stevedoring job. In the most recent attempt, Houston Police Department ("HPD") officers stopped Defendant's car for a traffic violation. He gave the police a false name and date of birth. He was arrested at the scene. Once in custody, HPD was able to identify him through fingerprints. There was an active blue warrant outstanding for his arrest.

Defendant's Evidence

The Defendant made a proffer. His aunt and other family members agreed to act as surety or custodians. The blue warrant would have to be handled. His uncle would provide Defendant with a job and he could live with the uncle at the grandmother's house.

Because PTS had not vetted the proffered sureties and custodians and could not verify Defendant's information, the matter was recessed for a week to see whether Defendant could provide a sufficient residence, surety, and custodian such that he could be released on bond.

The next week, the Court reconvened the hearing. Defendant's counsel informed the Court that the uncle was not a suitable third-party custodian because he was on probation or parole. Thus, Defendant could not live with the uncle at the grandmother's house. His aunt has a criminal history so she could not be a surety. Defendant had a girlfriend, who Defendant had not previously acknowledged to PTS, said that she would be a third-party custodian.

Order

Based on allegations in the Indictment, the information in the Pretrial Services report, the evidence, and the attorneys' arguments, the Court concludes as follows:

(1)     The Government has met its burden of persuasion and demonstrated, by a preponderance of the evidence, that Defendant poses a serious risk of flight such that no condition or combination of conditions of release would reasonably ensure his appearance as required. See United States v. McConnell, 842 F.2d 105, 110 (5th Cir. 1988) (en banc) ("It is sufficient for the court to find by a preponderance of evidence that the defendant poses a serious risk of flight."). Defendant has had no legitimate or verifiable employment since 2018. He has no property or assets. He has no suitable employment. PTS never reached the uncle, so we have no vetted information on him. Thus, the job that Defendant would undertake with the uncle was not verified. The uncle was on probation, so he has a record. If he has a felony conviction, Defendant is not allowed to associate with him. Thus, he could not work with him. No adequate housing was identified.

Because the uncle has a record, Defendant could not live with him. Defendant specifically stated he had no marriages or romantic relationships and so the purported girlfriend was not acknowledged as such during the PTS interview. He has an outstanding warrant for failing to appear. His probation was revoked once and his finished unsatisfactorily in another case. The revocation of probation and unsatisfactory finish show that Defendant cannot follow orders of the court. Therefore, Defendant's capacity to flee and evade detection support his continued detention pending trial.

(2)    In addition, the Government established by clear and convincing evidence that Defendant is a danger to the community. Defendant has participated in a sophisticated BEC that fraudulently obtained millions of dollars from two insurance companies. Defendant used some of that money for his own purposes and sent some of the money to others, likely his co-conspirators. He has felony convictions and has served prison time, but continues to engage in illegal activities. Thus, Defendant is a continuing danger to the community.

The weight of the evidence and the serious nature of the offenses with which Defendant is charged in the indictment support Defendant's detention pending trial.

Thus, the Court concludes that there are no conditions or combination of conditions that would reasonably assure the appearance Defendant at trial or the safety of the community.

## Part IV - Directions Regarding Detention

The defendant is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.  The defendant must be afforded a reasonable opportunity for private consultation with defense counsel.  On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

Date:         06/21/2022                                     _Dena Palermo_

United States Magistrate Judge